UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IBRAHIM ABDELMASSEH,

     Petitioner(s),

 v.

BRUCE SCOTT, et al.,

     Respondent(s).

CASE NO. C26-1681-KKE

ORDER ON HABEAS PETITION

Petitioner has been detained at the Northwest Immigration and Customs Enforcement ("ICE") Processing Center ("NWIPC") since November 2025, and an immigration judge denied bond because he found that Petitioner was a flight risk. Because no reasonable person could reach that conclusion on this record, the Court finds that the immigration judge abused his discretion. The Court will therefore grant the petition for writ of habeas corpus and order the Government[1] to release Petitioner from custody.

## I. BACKGROUND

Petitioner is a native and citizen of Egypt. Dkt. No. 7 ¶ 3. In October 2024, Petitioner entered the United States without inspection near Tecate, California, where he was apprehended by immigration officials, found inadmissible, and placed in expedited removal proceedings. *Id.* ¶¶ 4–5, Dkt. No. 1 at 5. About a month later, ICE released Petitioner from custody and granted

---

[1] This order refers to all Respondents except Bruce Scott collectively as "the Government."

ORDER ON HABEAS PETITION - 1

him interim parole, which would expire in one year.  Dkt. No. 1 at 5, Dkt. No. 7 ¶ 5.  Implicit in the decision to release Petitioner was a finding that he posed neither a threat to the community nor a flight risk.  *See* 8 C.F.R. § 212.5(b) (listing requirements for parole, including a determination that noncitizen "present neither a security risk nor a risk of absconding").  While paroled, Petitioner relocated to New York City where his two cousins live and regularly attended in-person check-ins with ICE. Dkt. No. 1 at 5.  During this time, Petitioner worked in construction, attended St. George Coptic Orthodox Church in Brooklyn, reported to regularly scheduled ICE check-ins, filed for asylum, and acquired no criminal record.  *See* Order, *Abdelmasseh v. Hermosillo*, No. 2:26-cv-730-MLP (W.D. Wash. Apr. 1, 2026), ECF No. 17 at 14–15 ("*Abdelmasseh I*").

On November 26, 2025, shortly after his parole expired, Petitioner attended a pre-scheduled, in-person appointment with ICE.  Dkt. No. 1 at 6, Dkt. No. 7 ¶ 6.  ICE took Petitioner into custody, and Petitioner expressed a fear of returning to Egypt.  Dkt. No. 7 ¶ 6.  ICE then transferred Petitioner to NWIPC and later served him with a notice to appear at immigration court for removal proceedings.  *Id.* ¶¶ 7–8.  At a hearing, an immigration judge ("IJ") pretermitted Petitioner's requests for asylum and related relief pursuant to an Asylum Cooperative Agreement with Uganda and ordered Petitioner removed to Uganda.  Dkt. No. 7 ¶ 9–11.  Petitioner appealed his removal order to the Board of Immigration Appeals ("BIA").  *Id.* ¶ 13.  That appeal is currently pending.  *Id.*

Petitioner filed a previous habeas petition with this Court.  Dkt. No. 1 at 6; *see generally Abdelmasseh I*.  The Court granted his petition in part, ordering that Petitioner receive a bond hearing within seven days of the order at which the Government would bear the burden of proving by clear and convincing evidence that Petitioner is a danger to the community or a flight risk.  *Abdelmasseh I* at 16.

Consistent with that order, the immigration court held a bond hearing in April 2026, where Petitioner was represented by counsel. Dkt. No. 7 ¶ 15. The IJ initially denied bond without explanation except for a checked box indicating the IJ found Petitioner to be a flight risk. Dkt. Nos. 6-2, 8. But later, after Petitioner appealed, the IJ issued a written memorandum. Dkt. No. 6-3. In his memorandum, the IJ explained that Petitioner was a flight risk because, according to the IJ, he has "limited equities and ties in the United States." *Id.* at 5. Petitioner's appeal of the bond denial is currently pending with the BIA. Dkt. No. 7 ¶¶ 15–16.

Petitioner filed a second habeas petition on May 15, 2026, arguing that the IJ abused his discretion in denying bond and requesting release as a remedy. Dkt. No. 1. For the following reasons, the Court agrees that Petitioner's continued detention is unlawful and that he must be released.

## II.  ANALYSIS

To succeed on a habeas petition, a petitioner must show he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

In *Abdelmasseh I*, the Court applied the three-factor test from *Mathews v. Eldridge*, 424 U.S. 319 (1976) to evaluate whether Petitioner was constitutionally entitled to a bond hearing. *Abdelmasseh I* at 5–8, 14–16. The Court held that he was and concluded that Petitioner's re-detention without notice or an opportunity to contest his custody violated due process. *Id.* at 8.

ORDER ON HABEAS PETITION - 3

The question presented in the current habeas petition is whether the bond hearing and bond decision issued pass constitutional muster.[2]

As the Court explained in *Abdelmasseh I*, the burden at the bond hearing was on the Government to prove by clear and convincing evidence that the detainee poses a flight risk or a danger to the community. *See Abdelmasseh I* at 10; *Singh v. Holder*, 638 F.3d 1196, 1204 (9th Cir. 2011), *abrogated on other grounds by Jennings*, 583 U.S. 281; *see also Rodriguez v. Robbins*, 715 F.3d 1127, 1144 (9th Cir. 2013) (holding "the constitutionally grounded hearing requirements set forth in *Singh* are also applicable [to bond hearings for those detained under § 1225(b)]")); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1199 (9th Cir. 2022) (explaining that clear-and-convincing-evidence standard in *Singh* was based on general principles of due process). The Supreme Court has explained that the clear and convincing evidence standard requires sufficient evidence to "place in the ultimate factfinder an abiding conviction" that a factual contention is "highly probable." *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (citation omitted).

A district court reviews an IJ's bond determination as to dangerousness and flight risk for abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024). When reviewing for abuse of discretion, the district court does not reweigh the evidence, but rather determines whether the IJ applied the correct legal standard. *See id.* at 785.

In making bond determinations, IJ's consider the so-called "*Guerra* factors":

(1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen's] length of residence in the United States; (3) the [noncitizen's] family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen's] employment

---

[2] The Government's return focuses almost exclusively on its claim that the Court should require Petitioner to exhaust administrative remedies before considering the habeas petition on its merits. Dkt. No. 5 at 3–6. The Court waives prudential exhaustion in light of the irreparable injury that results from the continued unlawful detention the petition alleges. *See Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004); *see also Garcia Ortiz v. Henkey*, No. 1:26-cv-00043-BLW, 2026 WL 948275, at *3 (D. Idaho Apr. 7, 2026) (waiving administrative exhaustion requirements because "given the broader irregularities in bond hearings across the country … administrative remedies in the immigration system appear no longer efficacious").

history; (5) the [noncitizen's] record of appearance in court; (6) the [noncitizen's] criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen's] history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen's] manner of entry to the United States.

*In Re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006).

On this record, the Court concludes that no reasonable factfinder could determine that the Government met its burden to establish flight risk by clear and convincing evidence. Accordingly, the IJ abused his discretion in denying bond. The IJ relied on Petitioner's purportedly "limited" ties in the United States, the length of time he has lived in the Country, and the uncertain outcome of the pending appeal of his removal order. Dkt. No. 6-3 at 5. But the IJ never explained how these factors demonstrate flight risk and failed to engage with the evidence showing Petitioner maintained employment, acquired no criminal record, and complied with all conditions of his release—even when doing so was likely to lead to his re-detention and possible removal.[3]

While an IJ is not required to "discuss each piece of evidence submitted" in assessing flight risk, an IJ's "fail[ure] to mention highly probative or potentially dispositive evidence" is a "red flag[]" that undermines the assumption that the IJ considered the evidence and applied the correct standard. *Martinez*, 124 F.4th at 785. Here, the IJ failed to mention several highly probative facts that undermine the Government's efforts to show flight risk. Most strikingly, the IJ never mentioned Petitioner's record of attending every required ICE check-in appointment, including his most recent appointment, which he attended even though his only legal basis for remaining out of custody—his parole—had expired. *Abdelmasseh I* at 14–15. Petitioner has now been detained for

---

[3] Among the evidence before the IJ was the habeas order in *Abdelmasseh I* (Dkt. No. 6-3 at 4), finding that Petitioner has no criminal record and that, while on parole, he "relocated to New York, reported to ICE, attended in-person check-ins, filed for asylum, attended St. George Coptic Orthodox Church in Brooklyn, and worked in construction[.]" *Abdelmasseh I* at 14–15. Petitioner also submitted letters and certificates from his church, letters of support from friends and sponsors, and his identity documents in support of his request for bond. Dkt. No. 6-3 at 4.

ORDER ON HABEAS PETITION - 5

seven months as a result of his arrest at that appointment. His demonstrated compliance with the terms of his parole strongly supports the Government's earlier determination—which it was required to make upon releasing him—that Petitioner does *not* present a risk of absconding. *See* 8 C.F.R. § 212.5(b).

Other evidence since his release—including his work history, church ties, and lack of a criminal record—bolsters that initial determination as well. *See* Dkt. No. 1 at 5, 12; *Abdelmasseh I* at 14–15. Yet the IJ's memorandum is silent as to these facts. Dkt. No. 6-3. By failing to engage with much of the evidence undermining the Government's position, the IJ failed to hold the Government to its burden to present clear and convincing evidence establishing flight risk.

The IJ relied on the fact that the letters of support submitted by Petitioner from his cousins did "not explain how [Petitioner and his cousins] are specifically related."[4] Dkt. No. 6-3 at 5. The IJ also faulted Petitioner for not providing his cousins' contact information when he was initially apprehended in 2024. *Id.* But even assuming, as the IJ apparently believed, that these letters were entitled to diminished weight, the IJ never explained how they support the Government's burden to establish flight risk by clear and convincing evidence. Instead, by focusing almost entirely on perceived gaps in Petitioner's evidence, the IJ effectively shifted the burden onto Petitioner to *disprove* flight risk, rather than requiring the Government to *prove* it.[5]

Similarly, the IJ relied on Petitioner's length of time in the Country and the IJ's own assessment that the outcome of Petitioner's appeal of his removal order was "speculative." Dkt.

---

[4] At Petitioner's bond hearing, his counsel explained that Petitioner's cousins are related to him through his father and they are U.S. citizens. Petitioner lived with his cousins in New York prior to his re-detention. Dkt. No. 8.

[5] Notably, in its return to the habeas petition, the Government does not meaningfully engage with the *Guerra* factors or otherwise attempt to demonstrate how the Government met its burden at the bond hearing. The thrust of the Government's argument is that because a bond hearing was held, due process has been provided. Dkt. No. 5 at 7–8. This is not the standard. Moreover, in addition to the IJ's written findings, the Court has reviewed the audio recording of the bond hearing. At that hearing, counsel for the Government was only vaguely familiar with the facts of Petitioner's case and offered little argument in support of detention. While the IJ purported to place the burden on the Government, the audio from the hearing demonstrates otherwise.

ORDER ON HABEAS PETITION - 6

No. 6-3 at 5. Again, the IJ never explained why Petitioner's one-and-a-half years of living in the United States rendered him a flight risk; and the IJ declined to address evidence suggesting that Petitioner had, during this time, developed solid ties to his community though his church and work. *See* Dkt. No. 1 at 5, 12; *Abdelmasseh I* at 14–15. As for Petitioner's likelihood of success appealing his removal order, "'the fact of a removal order is not sufficient by itself to deny bond' or establish flight risk." *Sanchez Henao v. Hernandez*, No. 2:26-CV-00707-LK, 2026 WL 1492714, at *7 (W.D. Wash. May 28, 2026) (quoting *Tavurov v. Noem*, No. 2:26-CV-00668-TLF, 2026 WL 1283513, at *7 (W.D. Wash. May 11, 2026)); *see also Singh*, 638 F.3d at 1205 (holding that a removal order "alone does not constitute clear and convincing evidence that [a noncitizen] presented a flight risk justifying denial of bond"); *N.A. v. Warden, Adelanto Det. Facility*, No. 5:25-CV-03007-MBK, 2026 WL 1045196, at *8 (C.D. Cal. Apr. 15, 2026) ("[A]ll unresolved claims for immigration relief are, by definition, 'speculative,' but that does not mean a noncitizen cannot be trusted to appear for future court proceedings on that basis alone."). Petitioner's likelihood of success in appealing his removal order is particularly inconclusive of flight risk here, where Petitioner has a demonstrated history of appearing before immigration authorities despite facing likely detention and possible removal.

Because the Court finds that this record unequivocally contradicts the IJ's flight-risk finding, the Court finds that the IJ abused his discretion in denying bond based on that finding. Petitioner's continued detention would serve no immigration purpose, and the Court will exercise its discretion to order Petitioner's release. *See Garcia Miranda v. Hernandez*, No. 2:26-cv-00906-JNW, 2026 WL 1328227, at *4–5 (W.D. Wash. May 13, 2026); *Escalante Perez v. Hernandez*, No. C26-0956 TSZ, 2026 WL 1004559, at *2 (W.D. Wash. Apr. 14, 2026).

### III.  CONCLUSION

For these reasons, the Court GRANTS the habeas petition. Dkt. No. 1.

ORDER ON HABEAS PETITION - 7

1.      The Government must release Petitioner no later than June 25, 2026, on reasonable conditions of supervision.

2.      The Government must file a status report no later than June 29, 2026, confirming compliance with this order.

3.      The Government is prohibited from re-detaining Petitioner unless and until he is provided with adequate notice and a hearing before an immigration court to determine whether re-detention is appropriate.

4.      Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.


Dated this 24th day of June, 2026.


Kymberly K. Evanson
United States District Judge

ORDER ON HABEAS PETITION - 8